**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 1:22-mj-76-02 (GMH) |
| | ) | |
| HAIDER ALI | ) | |
| _____ | ) | |

**DEFENDANT HAIDER ALI'S OPPOSITION TO MOTION FOR DETENTION**

NOW COMES Defendant Haider Ali, by and through undersigned appointed counsel, and files this opposition to the Government's Motion for Detention.

In support of its Motion, the Government has filed a lengthy 30-page brief, plus another 11-page supplemental brief, often resorting to speculation and often conflating both defendants in and effort to demand that Mr. Ali too must be held in custody based on this single Class E felony (3-year maximum) criminal charge, which (at least as to Mr. Ali) under the U.S. Sentencing Guidelines would likely only yield a guidelines range of 0-6 months – meaning he would be eligible for *__probation__* as a first offender, *__even if convicted__*.  Particularly as to Mr. Ali, detention is unwarranted, and the Government's motion must be denied.  Indeed, given this fact and Mr. Ali's family situation, he should properly be released on bail as soon as possible.

**OVERVIEW**

Based on the Government's reckless innuendo about how this case somehow involves a threat to national security – innuendo reported in the press and further amplified on social media, with immense reputational harm to Mr. Ali – one might believe this investigation has uncovered some wide-ranging plot to infiltrate law enforcement or even the White House.[1]  But as this

---

[1] The Government, for example, cites how one of the Secret Service officers involved was assigned to First Lady Jill Biden's detail – but has not yet shown that either of these two defendants was even *aware* of that fact.  Nor is there any proof (or even any claim) that any favor – from Ali or Taherzadeh – was ever sought from any Secret Service officer, despite interactions with those officers that apparently had been ongoing for an extended period of time.

Court's skepticism after hearing the actual evidence confirms, nothing of the sort has been established.  Indeed, when pressed by the Court at Friday's detention hearing, the Government acknowledged it was unaware if or how many contacts Mr. Ali had in Pakistan.  It even clarified the Government is *not* claiming Mr. Ali received any substantial funds or got any money from Pakistan, and it specifically conceded they are not asserting this as a basis to detain him.[2]  And with good reason: Despite the Government's overly-loose references to the things "they" did, the facts when properly focused on Mr. Ali individually in no way support him being detained.

## FACTUAL BACKGROUND

Because this Circuit allows detention hearings to proceed based only on proffers, Mr. Ali will not seek to rebut all of the Government's factual claims at this point.  But the asserted facts against Mr. Ali must properly be distinguished from those against his co-defendant Taharzadeh.

### A.      Facts as Stated in Criminal Complaint

Looking at those facts, the Criminal Complaint's paragraph 6 gives a generalized summary of what both defendants supposedly did, but that paragraph's "Specifically" clause then talks *only* about things that "TAHARZADEH" did (the apparent actions that led 4 Secret Service agents to be placed on administrative leave).  Further, Paragraph 13's description again mentions only Taherzadeh as offering to provide a rifle to a member of the USSS.

Moving beyond these initial, generalized descriptions, the Criminal Complaint then summarizes FBI interviews with apartment residents (Witness 1-5) – but largely describes those witnesses' interactions as being with *only* Taherzadeh:  Paragraph 16 notes how Witness #1 said that while Taherzadeh had described himself as an HSI Special Agent, he said Mr. Ali was merely "affiliated with HSI" and "had no arrest powers."  Paragraphs 24-36 similarly show

---

[2] As the Court knows, Mr. Ali has also been determined to be indigent and entitled to appointment of counsel.  No Pakistani intelligence supporter or other person has stepped in to offer to retain private counsel for Mr. Ali.

Witness #2 claiming Taherzadeh described himself as an "HSI Agent" who was part of a "covert task force"; it is Taherzadeh who loans out a "government vehicle," and is described as having security cameras on his primary residence, with tactical gear, Pelican cases and a FLETC certificate in his home, and using firearms outside his home; Witness #2 says Mr. Ali was merely described to him by Taherzadeh as an "HSI Analyst." Paragraphs 37-45 describe Taherzadeh as saying he was in HSI's gang unit, and sending an email from ataherzdeh@dhs.ussp.us. It is Taherzadeh who provides Witness #3 with a rent-free apartment and other gifts, possesses FLETC certificates and a PIV card, and carries the Glock. Witness #3's only knowledge of Mr. Ali was merely that he also lived in the complex. Paragraphs 46-50 similarly show Witness #4's discussions with only Taherzadeh, who carries a weapon and has elevator codes, plus identified items in his home; Mr. Ali is not mentioned at all. Paragraphs 51-63 also show Witness #5's interactions with only Taherzadeh, who provided him with his apartment and other gifts, exhibited a PIV card and police credentials, and carried firearms. It is Taherzadeh who is alleged to have the apartment records with residents' names and room numbers. Mr. Ali is only mentioned in paragraph 63, where Witness #5 simply says Taherzadeh had told him Mr. Ali took care of "administrative" issues for "TAHERZADEH'S HSI task force."

Finally, paragraph 64 shows "United Special Police LLC" (USSP) is an LLC registered to Taherzadeh, its beneficial owner. Nothing suggests Mr. Ali holds any ownership or title at all.

### B. Facts as Stated in Government's Detention Memorandum

The Government's Detention Memorandum's facts also focus on co-defendant Taherzdeh far more than Mr. Ali. It describes 5 locations that were searched: (1) Penthouse 5, (2) Apt. 708, (3) Apt. 608, (4) Apt. 509, and (5) Apt. 1361. Of these 5 locations, the Government claims the search of three of those (Penthouse 5, Apartment 608, and Apartment 509) "revealed significant

facts relevant to the pretrial detention."  As shown below, Ali's apartment (608) yielded little.

On Penthouse 5, the Government tries to claim it was "maintained and controlled by Taherzadeh and Ali," but fails to explain why it believes Mr. Ali in fact held such control, especially since it acknowledges Penthouse was being "currently used for the operation of 'U.S. Special Police, LLC' (USSP), Taherzadeh's company."  Inside was the Glock owned by Ali but which was admittedly being used and carried by Taherzadeh.  Many other items found inside lack any stated link to Mr. Ali at all.  The only items arguably linked are "passport photos of what *appears* to be Ali" (emphasis added), unspecified "miscellaneous mail and documents associated with Taherzadeh *and* Ali" (emphasis added), and a Jiffy Lube invoice for a Chevy Impala, referencing "James Haider."  The Government attempts to make much of the latter, but we urge the Court to look at that invoice more closely:  The car is listed as part of a fleet, and the "Authorizer Name" is "Fay Tate."  "James Haider" is merely referenced under "Driver Name."[3]

Apartment 708 is admittedly Taherzadeh's residence.  The Sig Sauer P229, the five fully-loaded magazines and 61 rounds, the Airsoft rifle with scope, two Airsoft pistols, 68 rounds of ammunition, plus rifle scope, tactical gear, high-end drone, handcuffs, zip ties, and breaching equipment, etc. – most all of the items now being raised as the primary basis for detention based on dangerousness – were all found in this location "maintained and controlled by Taherzadeh."

Apartment 608 is the one that the Government claims Ali "maintained and controlled." The Government's description contains but a single sentence of what was seized:  "laptops, flash drives, a USSP badge, and police lights that can be installed in a vehicle."  Nothing else.

Apartment 509 was "maintained and controlled by Resident 1, who had been given use of the apartment by Taherzadeh."  No firearms or ammunition was found inside, nor has the

---

[3] Mr. Ali admittedly used to be a professional driver, in his father's company and elsewhere.

Government established that Mr. Ali had any right to enter this apartment or knew its contents.

Perhaps recognizing the paucity of detention evidence against Mr. Ali, the Government's Detention Memorandum then tries another approach:  pointing to Mr. Ali's travel records.  First, it says he had "two passports," even though one of those he held was expired (as many of us keep).  Mr. Ali had obtained two visas to enter Iran and had four entry/exit stamps (consistent with two legal trips to Iran), plus a trip to Iraq.  None of this is particularly remarkable, since Mr. Ali's faith's major religious shrines are located there, and these visits also all took place more than two years ago, with no visits or established contacts since.  The Government also points to visas Mr. Ali had to visit Pakistani (which expired in 2015 and 2017, respectively – both over five years ago) plus a trip to Egypt, back in 2013.  Other records showing travel through/to Doha, Qatar, a major international hub, are also wholly consistent with the above-referenced trips.

The remaining facts address Taherzadeh's alleged deletion of incriminating materials, plus his apparent attempt to shift blame to Mr. Ali for obtaining the apartment access codes, and even for supposedly funding day-to-day operations, involving a company he alone controlled.

### C.  Facts as Stated in Government's Supplemental Memorandum

Yesterday, the Government also filed a new Supplemental Memorandum in support of detention.  Once again, however, the Government has tried to conflate Taherzadeh and Mr. Ali.

First, the Government claims that the ammunition magazines seized from the Glock 19 and the Sig Sauer were "illegal, high-capacity magazines."  The magazines were found in Apartment 708 (Taherzadeh's residence) and for the Glock, in Penthouse 5 – not Mr. Ali's residence.  There is no proof Mr. Ali purchased, used or possessed any of these magazines.  And even if the Government could link those to Mr. Ali, the Government's great fanfare in describing the severity of such violations appears overblown:  possession of such magazines is not a federal

crime at all, and even if it can be sustained under D.C.'s local statute, which as noted below is

questionable, *see infra* note 7, such violations also carry a maximum penalty of just three years.

The Government also describes the defendant's (separate) efforts to obtain Special Police

Officer ("SPO") credentials.  According to the Government, Taherzadeh applied once

unsuccessfully, and then applied again and was given a commission as an unarmed SPO, which

later expired in December 2021.  Mr. Ali separately applied and was denied a commission, based

on a prior arrest over 13 years ago in 2009, later *nolle prossed*, and a domestic assault arrest in

2018, later dismissed – with neither resulting in a conviction.  The Government also tries to

suggest that Mr. Ali had somehow carried a gun despite the denial of his open carry permit, but

its evidence is lacking.  While the Government's various witnesses had described Taherzadeh

regularly carrying firearms, *not one said Mr. Ali did.*  The best the Government can try to cobble

together is its claim that a concealed carry holster for Ali's Glock was found in Penthouse 5 –

which proves nothing.  That was not Ali's apartment, and there is no proof whatsoever that Mr.

Ali, as opposed to Taherzadeh (who admittedly carried that same Glock) was the one who owned

or used that holster.  There is zero evidence beyond pure innuendo of any carrying by Mr. Ali.

The Supplemental Brief's new revelations, when scrutinized, thus also reveal actions by

Taherzadeh with Mr. Ali on the sidelines, or accusations that omit important specifics.[4]

### D.  Facts as Revealed in the Government's Newly-Disclosed Documents

Shortly after the Government filed its Supplemental Brief yesterday, it produced to the

defense the Memorandums of Investigation prepared by the U.S. Postal Inspection Service, as

requested by defense counsel on Friday.  Those summaries provide substantial exculpatory

---

[4] The Government claims at one point, for example, that a former U.S. Marine now claims to have observed illegal weapons, but it never specifies the apartment where he claims he saw those; Ali is described as being "presen[t]" when these (unverified) weapons were supposedly seen – but that is no proof he possessed (or even knew of) them.

information related to these detention hearings, particularly as to Mr. Ali.

In an initial interview held March 16, 2022, the summary quotes Mr. Ali as stating "I'm an investigator with USSP Special Investigation's Unit, part of DHS." Later, he again says of the USSP Special Investigations Unit, "It's part of DHS." Nowhere is it recorded that Mr. Ali ever once said he was a government officer or employee himself.

On March 21, 2022, in a follow-up interview, Ali is re-interviewed and asked again if USSP is part of DHS, and he says, "As I understand it. We do investigations for DHS." When told by the Postal Inspector that USSP is not a part of DHS, and asked why he had said this, Mr. Ali replied that he had been speaking "to the best of my own knowledge," and stated his understanding that "DHS sends many cases to USSP. I'm an investigator at USSP and get assigned some of those." In this follow-up meeting, Ali also affirmatively "confirmed that he is not a sworn law enforcement officer." He further stated that "TAHERZADEH is his manager and ALI gets cases from him. ALI said he understands USSP to be involved with DHS. ALI said, 'I'm just an investigator for USSP.'" He also voluntarily provided the agent with his given name and even his personal gmail address.[5]

Later that day on March 21, Ali submitted to a second follow-up interview with the Postal Inspector. When asked why he had described Taherzadeh as a HSI Special Agent, "ALI said, 'he is HSI.'" When the Postal Inspector told him that Taherzadeh in fact was not with HSI and asked again, "ALI said 'I understand him to be HSI. He is conducting large investigations in DC.'" After stating he was "implying to the best of my knowledge … Just being honest as I understood," Mr. Ali by the end states, "I didn't know Ari (TAHERZADEH) wasn't an agent…. I'm sorry for misrepresenting." Mr. Ali then "had nothing further to add and said, 'I'm sorry.'"

---

[5] Such voluntary disclosures would not likely be given by a sophisticated party working with Pakistani intelligence.

Later that same day, the Postal Inspector claims Mr. Ali texted him and said he had gotten carried away and had "basically lied" because he "just wanted to feel like I was on the same level with you guys and I have realized my mistake, that's really stupid of me." Mr. Ali noted his ongoing job struggles and said, "I want to do the right thing, if you want me to turn myself in, please let me know and I am willing to do that! I promise will never happen again. I'm ashamed and embarrassed for my actions." The Postal Inspector replied, "I appreciate your honesty. Since you owned the problem I'll move on from this and close the case out."

The case was not closed out, however. Mr. Ali was arrested without warning, and he has been held in custody ever since. Many of these mitigating facts, including Mr. Ali's expressed willingness to turn himself in, were never mentioned in the Government's previous filings in this Court, even as the Government forcefully attempted to portray Mr. Ali as an obvious flight risk.

## ARGUMENT AND CITATION OF AUTHORITIES

Under the Bail Reform Act, codified at 18 U.S.C. § 3142, this is not a presumption-of-detention case. The law is therefore quite clear: the law favors release on the least restrictive conditions unless the Government can meet its burden of proving that detention is required.

Here, Mr. Ali has been charged in a criminal Complaint with a single offense: violation of 18 U.S.C. § 912, False Impersonation of a Federal Officer. The Government claims that this offense can support a detention based on future dangerousness, under 18 U.S.C. § 3142(f)(1)(E). It also asks to detain Mr. Ali based on a supposed risk of flight, under 18 U.S.C. § 3142(f)(2)(A).

### A. Mr. Ali Cannot Properly Be Detained Under 18 U.S.C. § 3142(f)(1)(E)

The Government has not established that Mr. Ali can be properly detained by this Court under 18 U.S.C. § 3142(f)(1)(E) based on its claims of future dangerousness.

## 1. Mr. Ali's Charged Offense Does Not Even Theoretically Qualify for Detention Based on a Risk of Future Dangerousness

The Government argues that a § 912 impersonation offense can support detention based

on future dangerousness, even though none of its elements involve firearms, because this case

(when viewed more broadly) involves possession and use of firearms. The Government's only

cited basis for its claim that this Court can look beyond the elements of the charged offense is

*United States v. Watkins*, 940 F.3d 152, 166 (2d Cir. 2019), an opinion from the Second Circuit.

*Watkins* is easily distinguishable, and an unusual-facts case. There, the defendant had

been charged with possession of ammunition by a convicted felon. In fact, the defendant there

"discharged no fewer than nine bullets from an illegally possessed firearm." *Id.* at 167. In fact,

the only reason the defendant had not been charged with possession of a firearm in *Watkins* was

that he had negotiated a deal, in which he had agreed to take authorities to find the gun in return

for a pledge he would not be charged with felon-in-possession-of-a-firearm. When his lawyer

then tried to argue that a possession of ammunition charge would not support detention based on

dangerousness, the *Watkins* court balked. Did that felony of illegal possession of ammunition

that had even been fired also involve a firearm? Obviously, and the Second Circuit said yes.

That is a far cry, however, from the massive leap the Government seeks here, attempting

to brand a mere § 912 impersonation charge – basically a white-collar offense – as a charged

felony that "involves the possession or use of a firearm" – as 18 U.S.C. § 3142(f)(1)(E) requires

before it can potentially support detention based on future dangerousness. Nor can it be said that

the firearms in this case advanced the felony crime charged here in any way. Section 912 is at

bottom a false statement offense – which is basically completed the moment one represents that

he works as a government officer or employee with knowledge that the statement is false. Any

effort to be "more convincing" by carrying a firearm perhaps might be relevant in a fraud case

which additionally involves an intent to induce others, but that has no bearing at all in a § 912 case.  Under § 912, the false statement is all that matters, and that was completed if and when knowingly made.  If knowingly made, that felony crime would not be advanced or affected one way or another in this case by the presence or absence of any firearms.

As § 3142(f)(1) makes clear, not all felonies can legally authorize detention based on mere predictions of risk of future dangerousness; only a limited subset of federal felonies qualify.[6]  It is far from intuitive that Congress ever authorized this mere Class E § 912 felony offense, with only a three-year statutory maximum, as a felony that would fall within the limited category of offenses that qualify for detention based on predictions of future dangerousness, even before any findings of guilt have been made.  On this basis alone, detention must be denied.

**2.   Mr. Ali's Release Has Not Been Proven Clearly Dangerous**

Even if § 3142(f)(1)(E) legally could support detention based on dangerousness, the Government has not proven Mr. Ali's release would create a future danger.  And that is particularly so since, as the Government concedes, it can only meet this standard if it establishes Mr. Ali's future dangerousness by a heightened standard of "clear and convincing" evidence.

This Court must consider four factors when evaluating if detention is necessary based on dangerousness:  (1) the nature and circumstances of the crime charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

---

[6] Before the Supreme Court's ruling in *United States v. Salerno*, 481 U.S. 739, 750 (1987) many courts (including the Second Circuit in *Salerno* itself) had concluded it was unconstitutional to base pretrial detention on predictions of future dangerousness, consistent with the presumption of innocence.  In *Salerno*, he Supreme Court disagreed and upheld the constitutionality of the Bail Reform Act, but only after declaring detention prior to trial to be a "carefully limited exception."  481 U.S. at 750.  To maintain the Act's constitutional validity, its strict limits must be honored.

### a.  Nature and Circumstances of the Crime Charged

The only crime with which Mr. Ali is charged is 18 U.S.C. § 912, which as noted is a

mere Class E felony, carrying a maximum sentence of only three years.  It is obviously not a

crime of violence.  Moreover, the applicable Sentencing Guideline for such offenses is U.S.S.G.

§ 2J1.4.  Under that Guideline, Mr. Ali would almost certainly face a total Offense Level of only

6, even if he *were* to be convicted of this charge, meaning that his Guidelines (as a first offender

in Criminal History Category I) would be only 0-6 months, with probation possible even if he

went to trial and lost.  Any notion that Mr. Ali must be detained on the front end of this case,

when he may well receive probation on the back end even if he is convicted and sentenced on

that charge, is wholly illogical.[7]  This factor strongly weighs against detention in this case.

### b.  Weight of the Evidence Against the Defendant

The weight of the evidence against Mr. Ali is not strong.  As the Government's recently-

produced discovery reveals, it is far from clear that Mr. Ali ever represented himself as a federal

government officer or employee, or that any such statements were known by him to be false.  A

review of his multiple interviews with Postal Inspectors in fact suggests that Mr. Ali may well

have naively but genuinely believed Taherzadeh was a HSI Special Agent, and that the work he

did for Taherzadeh's company (USSP) possibly included work that company got from DHS.

And why shouldn't Mr. Ali have believed Taherzadeh?  The Government itself has gone

to great lengths in describing how many experienced federal law enforcement agents –

individuals it notes are formally trained to look for and recognize deceptions such as this –

---

[7] The Government's Supplemental Brief also references a possible violation of D.C. Code § 7-2506.01(b), based on possession of an ammunition magazine that holds more than 10 rounds of ammunition.  Because Mr. Ali has not been charged with that offense, it cannot properly be considered here.  But even if sufficient evidence did exist to so charge him, that charge also carries a maximum penalty of only 3 years, *see* D.C. Code § 7-2507.06(a)(4), even if Mr. Ali were not given first-offender treatment.  Moreover, there appears to be significant doubt whether this statute is even constitutional under D.C. law.  *See Herrington v. United States*, 6 A.3d 1237, 1247 (D.C. 2010) (reversing because "Appellant was convicted of unlawful possession of ammunition in violation of the Second Amendment.")

nevertheless fell for this ruse, with four U.S. Secret Service agents even placed on administrative leave as a result.  Most of them talked primarily, if not exclusively, with Taherzadeh.  ***If all of those experienced federal agents, with their years or even decades of experience, did not see through Taherzadeh's claims, why is it fair to expect more from Mr. Ali***, a high school graduate with no college degree and none of their formalized training?  The likelihood the Government will be able to prove this § 912 offense against Mr. Ali, especially beyond a reasonable doubt, is uncertain, and detaining him pretrial would therefore be particularly unjust. This factor also weighs heavily against detention.[8]

### c.   History and Characteristics of the Defendant

Mr. Ali is over 35 years old.  He stands unconvicted of any non-traffic offense, ever in his life.  He is a naturalized U.S. citizen who came to this country with his family in 2001, over 20 years ago.  His own family includes a wife and four young children, plus parents and three siblings, most of whom (like Mr. Ali) have always lived in the metropolitan Washington, D.C. area.  His brothers, wife, father and mother submit letters of support, attached as Exhibit A.

These letters establish Mr. Ali as a good resident and worker, non-violent and with substantial support from his family.  It also reveals that Mr. Ali is badly needed back at home, since his wife underwent surgery just this past Friday, and his four very young children (ages 5, 4, 3 and 1 month) have had to be cared for by extended family members at considerable personal sacrifice, because of Mr. Ali's absence after being arrested in this case.

Mr. Ali's history and characteristics strongly weigh against detention.  And this factor should also be afforded particular weight in a case where a defendant comes before the Court

---

[8] Even if this factor is properly focused on the weight of the evidence of dangerousness, as the Government says, that evidence too is not strong.  As noted above, the Government is quite often unable to link Mr. Ali, as opposed to Taherzadeh, to the evidence of dangerousness that it presents.

with no prior convictions – since it is frankly this factor alone that most of us would ultimately

need to rely on to avoid detention if we were to ever be wrongfully charged.  Mr. Ali's 35 years

of living and working in society as a good father is a virtue not fairly diminished.  As a general

rule, and except in the most serious of cases, such persons typically should not be denied bail.

### d.  The Nature and Seriousness of the Danger if Released

No clear and convincing evidence exists that Mr. Ali would be a danger if released.  Mr.

Ali has never been convicted of any violent activity or gun offense.  The only firearm he owned

was *legally* purchased by him.  There is no evidence he ever used or carried the Glock he is said

to own – no one ever saw him carrying it.  Nor is he the one who had the Airsoft gun or allegedly

shot it (at a recipient who had apparently consented to be so shot) – that was Taherzadeh.  What

exactly is the Government's proof (especially "clear and convincing" proof) that Mr. Ali has

engaged in dangerous activity?  And even more importantly, what is the Government's basis for

claiming that Mr. Ali (if released) will be a *future* danger, now that the alleged impersonation has

become well known to Secret Service and other law enforcement agents as well as residents of

his building – and when Mr. Ali will surely no longer be residing in that complex?

Since this is not a rebuttable presumption case, release is the norm.  "An individual

subject to the Bail Reform Act … may not be detained pending trial except under carefully

defined circumstances."  *United States v. Simpkins*, 826 F.2d 94, 95-96 (D.C. Cir. 1987).  *Accord*

*United States v. Salerno*, 481 U.S. 739, 750 (1987) ("In our society liberty is the norm, and

detention prior to trial or without trial is the carefully limited exception.").  The only relevant

question is forward-looking:  before ordering detention, a judge must find "no condition or

combination of conditions _will_ reasonably assure the safety of any other person and the

community."  18 U.S.C. § 3142(e) (emphasis added).  The listed statutory factors in § 3142(g)

must be considered, but *only to the extent* they inform an assessment of *future* dangerousness. *See* 18 U.S.C. § 3142(g) ("The judicial officer shall, *in determining whether there are conditions of release that will reasonably assure ... the safety of any other person and the community*, take into account [these four factors].") (emphasis added).  Mr. Ali's activities are thus only relevant insofar as they bear on *future* dangerousness.  *See United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021) ("to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community").

What is the forward-looking "articulable threat" posed by Mr. Ali's release that the Government posits?  What exactly does it contend this man with no convictions will do to disrupt safety in this community where he has spent the last 20 years, particularly now that the alleged scheme has been written up widely in the press and is known to the world, between his release and any trial?  And why could any such risks not be ameliorated by conditions of bond?

The Government has not adequately proven by clear and convincing evidence that Mr. Ali's release would present a risk of future dangerousness to the community, and this factor also weighs against detention.  With conditions available such as home confinement, electronic monitoring, and restrictions on firearms, and more, any such risks could be minimized.

In short, none of the relevant factors, properly construed, supports a detention of Mr. Ali. Mr. Ali is currently being charged with only a single § 912 offense.  The Government has not proven, as it must by clear and convincing evidence, the need for Mr. Ali's continued detention under § 3142(f)(1)(E).  Accordingly, release on bail is appropriate and indeed, required.

**B.  Mr. Ali is Not a Serious Risk of Flight**

The Government also seeks Mr. Ali's detention based on its claims that he may be a flight risk.  But its claim is quite weak:  Mr. Ali is a naturalized U.S. citizen who has lived here

14

continuously since he was a young teenager in 2001, over 20 years ago.  As the attached letters

convey, living in the U.S. is the only life Mr. Ali has ever known.  Mr. Ali's wife and four young

children also live here in the U.S.  Mr. Ali has never defied a court order in his life, and after

submitting voluntarily to multiple voluntary interviews, he even offered to turn himself in on this

case, a point the Government failed to bring to this Court's attention:  *he affirmatively offered to*

*come in, not run away, even at a point when he was aware charges were possible and could have*

*left.*  To accept this assertion of flight risk, this Court would have to believe that Mr. Ali, facing a

mere 3-year felony where probation is quite possible, would instead abandon his entire birth

family who lives here in the U.S., plus his wife and four young children with whom he lives

(including an infant now just a month old), to move to another country where he has never lived

as an adult, has never visited for more than a few weeks, and has not been present in years.  The

suggestion borders on the preposterous, and the Government does not even explain how Mr. Ali

*could* accomplish that flight with his passports currently seized.[9]  Certainly it cannot be said that

the odds of Mr. Ali fleeing are more likely than not, even under the Government's lower

preponderance standard applicable here.  Detention cannot properly be ordered on this basis.  If

the Court does harbor any such concerns, those can easily be addressed through added conditions

of release such as an ankle bracelet, GPS monitoring, and/or home confinement, plus continued

surrender of his passports while on bail.[10]

---

[9] While the Government has filed a copy of a Pakistani visitor card Mr. Ali obtained, it is admittedly not a passport.

[10] The Government's supplemental filing also loosely refers to alleged concealment by Taherzadeh "and/or" Mr. Ali to conceal evidence.  The Government has never formally sought detention of Mr. Ali based on § 3142's obstruction prong, so this claim is irrelevant.  Even if it had been asserted, that evidence is also far too weak to support detention of Mr. Ali.  First, the notion that shipping evidence *to a federal agent* was obstruction seems rather far-fetched. Even if it were not, the gun cases shipped involved gun cases similar to what was found in Taherzadeh's apartment, and the Government has no proof at all Mr. Ali was the one who made the shipment, as its use of "and/or" concedes.

## CONCLUSION

The Government obviously wants these defendants detained, in this case which has generated substantial publicity.  It filed not only a 30-page brief, but after surmising on Friday that its arguments had not yet persuaded the Court, another 11-page brief yesterday.  Its latest filing includes remarkably hyperbolic language designed to infuse fear, such as this novelistic doozy: "Each hour since their arrest, the Government learns more—and scarier—information about how Taherzadeh and Ali abused their fake authority."  ECF #11, at 11.  Yet the only actual evidence it has presented against Mr. Ali so far is at most quite modest.  Nevertheless, repeating Friday's theme that "with every new fact uncovered … the story only gets worse," *id.* at 1, the Government in essence pushes this Court to detain Mr. Ali based on its professed likelihood that it may find more.  But that is not the law this Court must apply.  The Government does not get to detain human beings based on mere possibilities (or even probabilities) that future evidence might be found.  If it later finds such evidence, perhaps the Government can seek to detain later, but under our constitution, liberty is deprived only if the Government presents actual evidence and meets its required burdens of proving that this evidence demonstrates that detention is the only available option.  That burden has not been met here.  Accordingly, under the law, Mr. Ali must be afforded bail on this mere Class E felony charge, and released to his supportive family that very much needs him right now, under such conditions as this Court may deem appropriate.

This 10ᵗʰ day of April, 2022.

<div style="margin-left: 40%;">

Respectfully submitted,

\_\_\_/s/ Gregory S. Smith_____

Gregory S. Smith (D.C. Bar No. 472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C. 20003
Telephone:  (202) 460-3381
Email:  gregsmithlaw@verizon.net
*Counsel for Defendant Haider Ali*

</div>

## CERTIFICATE OF SERVICE

I hereby certify on December 31, 2021, that a copy of the foregoing is being served on all parties automatically, through their counsel of record in this case, via this Court's Electronic Case Filing (ECF) system.

<div style="margin-left: 40%;">

\_\_\_/s/ Gregory S. Smith_____
Gregory S. Smith

</div>